# Court of Appeals
## Tenth Appellate District of Texas

10-25-00123-CV

In the Interest of I.T. and E.T., Children

On appeal from the
472nd District Court of Brazos County, Texas
Judge George J. Wise, presiding
Trial Court Cause No. 23-003312-CV-472

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

In its sole issue on appeal, the Department of Family and Protective Services contends that the trial court abused its discretion by ordering the Department to pay attorney's fees and mediation fees for failing to mediate in good faith. We reverse.

## Background

The Department removed I.T. and E.T. after one of the children was hospitalized for possible non-accidental injuries. The paternal grandmother was suggested as a potential placement for the children. The record reflects that the Department was awaiting a report from its medical expert narrowing down the timeframe in which the child sustained the injuries before potentially

"ruling out" the grandmother as the perpetrator and considering her as a placement.

In October of 2024, with the one-year dismissal deadline approaching, the parties (excluding the Department) filed joint motions to extend the dismissal date and to attend mediation. The associate judge took up the motions on October 18th. Counsel for the Department informed the associate judge that "while the Department is not taking termination off the table" it was "open to considering something short of termination" and would "continue to review the grandmother and any additional relatives that are provided." The associate judge signed the Order for Mediation and extended the dismissal deadline.

Mediation occurred on January 16th, at which time the record reflects that the Department still had not received a written report from its medical expert to potentially rule out the grandmother.

A few days after mediation, each parent filed a Motion for Sanctions against the Department, claiming that the Department made "groundless" and "bad faith" statements when it agreed to attend mediation because it "had no intention to propose a resolution other than termination of the parents' rights."

On February 3rd, the Department received the medical expert's written report.

On February 12th, the associate judge heard evidence on the motions for sanctions as well as a motion to place the children with the grandmother. The Department explained that based on the medical expert's findings, it no longer opposed placing the children with the grandmother. Regarding the motions for sanctions, Father's attorney summarized the parents' position that the Department should be sanctioned because "there was no attempt at mediation to come in to negotiate at all," and that "there was no realistic movement for our clients […] to enter into an agreement that involved termination, and that was the only request."

After the associate judge pointed out that the Department agreed to attend the mediation, the following exchange occurred:

> The Court: By definition, if not objecting to mediation, in its entirety, means that you will go in good faith, correct?
>
> [The Department]: Your Honor, it was agreed as to four of the sides of the people. Yes, we agreed to go to mediation, but could not --
>
> The Court: If you go to mediation, is that not, by definition, the intent to negotiate in good faith?
>
> [The Department]: Yes, Your Honor.
>
> The Court: Okay.
>
> [The Department]: I believe the Department did.
>
> The Court: How many offers, other than -- as [Father's counsel] put it, "your best day in court" with termination, how many offers, other than accepting termination, were -- were forwarded by the

Department? I don't want to know what they are. I want to know how many other offers were made.

[The Department]: The Department had also offered a different resolution, if they -- if the parents were to provide someone who could be approved, ruled out as a perpetrator of abuse to the children.

The Court: So nothing other than they're going to get terminated?

[The Department]: No. It would not -- it would have been short of termination if somebody could've been offered at the time that we knew could have been ruled out.

The Court: At that time.

[The Department]: At that time --

The Court: Okay.

[The Department]: -- we did not know that [the grandmother] could be ruled out, Judge. It was after that mediation that [Father's counsel] requested the written report from the medical experts.

The Court: It's y'all's medical expert, correct?

[The Department]: Yes.

The Court: And y'all could have run that trap without [Father's counsel] asking for it; true?

[The Department]: Your Honor, and I did. It -- it was --

The Court: Hang on. Hang on. Y'all could have run that trap and had that information available to you before mediation because you knew when mediation was going to happen, correct?

[The Department]: We did.

The Court: Okay. All right.

[The Department]:  There were two --

The Court: All right.  All right.

[The Department]: And at that discussion, and we announced that in court at the different settings back in November, as well as in December, that, at that time, with the medical experts discussions were was [sic] that --

The Court: I --

[The Department]: Ms. --

The Court: I -- I can't get into the discussions or [sic] the negotiations are.  How many things, other than termination, did the Department forward at mediation? A number.  Not what they were.  A number.

[The Department]: Two.

The Court: Okay.

[The Department]: And, Your Honor, the Department did attempt to negotiate, and we could not --

The Court: Hang on.  I don't want to -- I don't -- I don't want to -- I cannot let you talk about what was -- what was -- I got [Father's Counsel] saying only termination.  You're saying there were two other offers.  I do not have in my file a Mediator's Statement from [the mediator].

[Father's Counsel]: Correct, Judge.

The Court: So I need a Mediator's Statement from [the mediator] as to her position because she's going to be the one that's in the best position, as an objective third-party mediator, to determine whether or not mediation was in good faith or was not in good faith.  So I am going to recess this hearing to get that information from [the mediator].  It needs to be filed today.  It needs to be filed before

we come back, which will be -- actually, we're going to take a real quick recess. It's 11:00. We're going to recess for 15 minutes, come back in 15 minutes, and you're going to let me know what time [the mediator] can get that filed.

[The Department]: Your Honor, may I please just make one more statement?

The Court: Sure.

[The Department]: Your Honor, on October 18th, when the Court entertained, everybody but the Department's, Motion for Mediation, the Court report -- told the parties to consider all options, even it can't resolve the case. If it can resolve limit issues. If it can -- just anything about it. The Department came, not only to resolve the entirety of the case, but also could we resolve anything to simplify trial, narrow the issues. The Department came to mediation in good faith.

The Court: [The mediator] is the one that's going to make that determination. I need to know when she can get that filed.

The associate judge briefly recessed the hearing. Upon return, a copy of the filed Mediator's Statement was offered by Father's counsel into evidence. All parties affirmatively voiced "no objection" to the exhibit. The Mediator's Statement says:

I was asked to mediate [the underlying case] and arranged for mediation to take place at my office on January 16, 2025. All parties appeared for mediation. All parties appeared with counsel at the opening of mediation and I asked for announcement of positions. I believe the parents and CASA appeared and were willing to mediate in good faith. I do not believe the Department mediated in good faith.

The associate judge then questioned the parties regarding the duration of mediation. The Department claimed that mediation lasted an hour and a half, while Father's attorney and the attorney ad litem believed less time was spent "actually actively engaged in" mediation.

The Department reminded the trial court that it could not require the parties to reach an agreement at mediation and re-urged that the Department approached mediation in good faith by acting on evidence available at the time. The associate judge stated:

> The fact that an impasse was called at an hour and a half, or less, at a maximum of an hour and a half, is material to my finding based on [the mediator's] letter. That the -- that the Department is believed, by [the mediator], not to have mediated in good faith.

The associate judge took the motions for sanctions under advisement.

On February 20th, the associate judge verbally pronounced her ruling on the motions for sanctions. She ordered the Department to pay $150 to Brazos County for Father's court-appointed attorney's time spent at the mediation, $200 to Mother as reimbursement for her mediation fee, and $600 to Mother's retained attorney for his time spent at the mediation.

A written "Order for Costs of Court" addressed Father's court-appointed attorney's fees. This order assessed the $150 in attorney's fees as court costs against the Department, finding as "good cause" that the Department never objected to the mediation referral yet did not "participate in good faith" at the

mediation. The associate judge signed the Order for Costs of Court on February 27th. A written "Order for Sanctions" addressed Mother's $600 attorney's fees and $200 mediation fee, assessing both as "sanctions" against the Department for failure to "attend mediation in good faith." The record does not indicate that the associate judge signed the proposed Order for Sanctions.

The Department timely filed a request for de novo hearing, and the associate judge *sua sponte* filed written findings of fact and conclusion of law.

The de novo hearing consisted of arguments of counsel, with no new evidence offered for the referring court's consideration. The referring court explained that the transcript from the hearing on October 18th was going to be instrumental to his determination. He stated, "[T]he fact of the matter is if you're going to go to mediation, you have to be able to enter into a mediation in good faith. If you can't, that's fine; but don't go to mediation." The referring court deferred his ruling until he could review the relevant reporter's record.

On April 1st, the referring court signed an "Amended Order on Department's Request for De Novo Hearing," which denied the Department's request for relief and "affirmed the trial court's findings." On April 11th, the referring court signed the proposed Order for Sanctions, which expressly grants Mother's Motion for Sanctions, includes a finding that "good cause exists to support an order for sanctions" against the Department for failure to

attend mediation in good faith, and assesses the $600 attorney's fees for Mother's attorney's time spent at the mediation and the $200 mediation fee paid by Mother. This appeal followed.

**Discussion**

On appeal, both parties analyze the Order for Sanctions and the Order for Costs of Court under the law applicable to inherent-authority sanctions; however, they also evaluate the Order for Costs of Court under Rule 141 of the Texas Rules of Civil Procedure as an assessment of court costs for "good cause." *See Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704 (Tex. 2020); TEX. R. CIV. P. 141.

The Department argues that the orders improperly penalize the Department for not mediating in good faith and contends that the evidence is insufficient to support a finding of "bad faith" for inherent-authority sanctions or "good cause" for the assessment of court costs. Father argues that the policy underlying alternative dispute resolution procedures "assumes good faith participation in the process," and that "[a]llowing a party to appear unprepared, rigid in position, and resistant to the spirit of ADR – yet immune from even limited cost consequences– would undermine the purpose of court-ordered mediation." We agree with the Department.

STANDARD OF REVIEW

We review a trial court's assessment of sanctions for an abuse of discretion. *Brewer*, 601 S.W.3d at 717. A trial court abuses its discretion when it acts without reference to any guiding rules or principles, or if it bases its order on an incorrect view of the law or a clearly erroneous assessment of the evidence. *Id.*; *Randolph v. Jackson Walker, L.L.P.*, 29 S.W.3d 271, 276 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). While we view conflicting evidence favorably to the court's decision, we are not bound by the court's findings of fact or conclusions of law. *Brewer*, 601 S.W.3d at 717. We independently review the entire record to determine whether the trial court abused its discretion. *Id.*

We also review a trial court's assessment of court costs for "good cause" for an abuse of discretion. *See* TEX. R. CIV. P. 141; *Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 376 (Tex. 2001).

RELEVANT LAW

Courts have a statutory duty to encourage the peaceable resolution of disputes, particularly those affecting the parent-child relationship. TEX. CIV. PRAC. & REM. CODE ANN. §§ 154.002, 154.003. As such, the ADR Act authorizes courts to refer a pending dispute to an alternative dispute resolution procedure, such as mediation. *Id.* at § 154.021. Any party may,

within ten days after receiving notice that the court has referred the dispute to mediation, object in writing to the referral. *Id.* at § 154.022(b). The court may not refer the dispute if it finds that there is a reasonable basis for the objection. *Id.* at § 154.022(c).

Trial courts have the authority to penalize a party for failure to attend court-ordered mediation. *See Decker v. Lindsay*, 824 S.W.2d 247, 250 (Tex. App.—Houston [1st Dist.] 1992, orig. proceeding). However, a trial court cannot compel parties to negotiate in good faith at the mediation. *In re Acceptance Ins. Co.*, 33 S.W.3d 443, 451-52 (Tex. App.—Fort Worth 2000, orig. proceeding); *Avary v. Bank of America*, 72 S.W.3d 779, 797 (Tex. App.—Dallas 2002, pet. denied). In other words, a court "can compel [the parties] to sit down with each other," but it "cannot force the disputants to peaceably resolve their differences." *Decker*, 824 S.W.2d at 250. The mediator, as an impartial third-party facilitator, is also not allowed to "compel the parties to mediate (negotiate) or coerce the parties to enter into a settlement agreement." *Id.* at 250-51; TEX. CIV. PRAC. & REM. CODE ANN. § 154.053(a). Therefore:

> [T]he policy of section 154.002 is consistent with a scheme where a court refers a dispute to an ADR procedure, requiring the parties to come together in court-ordered ADR procedures, but no one can compel the parties to negotiate or settle a dispute unless they voluntarily and mutually agree to do so. Any inconsistencies in chapter 154 can be resolved to give effect to a dominant legislative intent to compel referral, but not resolution.

*Decker*, 824 S.W.2d at 251.

With limited exceptions, any communication made by a participant during the mediation that relates to the subject matter of the dispute is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial proceeding. TEX. CIV. PRAC. & REM. CODE ANN. § 154.073. Even the manner in which the participants negotiate in mediation should not be disclosed to the trial court. *Tex. Parks & Wildlife Dep't. v. Davis*, 988 S.W.2d 370, 375 (Tex. App.—Austin 1999, no pet.). Further, neither the participants nor the third party facilitating the mediation may be required to testify in any proceedings relating to or arising out of the matter in dispute. TEX. CIV. PRAC. & REM. CODE ANN. § 154.073(b).

ANALYSIS

As a preliminary matter, we must address the Department's argument that the associate judge abused its discretion by soliciting the Mediator's Statement for use as evidence against the Department at the sanctions hearing. Despite the ADR Act's extensive confidentiality provisions, parties may agree to disclose otherwise confidential information regarding matters that occurred during the settlement process. *Id.* at § 154.053(c). Rather than objecting to the parents' accusations and the associate judge's questioning about what occurred during mediation, the Department answered questions

and attempted to offer its own evidence. Further, though we question the propriety of the associate judge's decision to solicit the Mediator's Statement[1], the Department affirmatively voiced "no objection" to its admission into evidence. The Department has therefore failed to preserve its complaint about the Mediator's Statement for review. *See* TEX. R. APP. P. 33.1.

Sanctions

Trial courts possess inherent authority to sanction parties for an abuse of the judicial process that may not be covered by any specific rule or statute.[2] *Brewer*, 601 S.W.3d at 718. However, that authority is not limitless. Here, the Order for Costs of Court penalizes the Department for failure to "participate in good faith at mediation." The Order for Sanctions penalizes the Department's failure to "attend mediation in good faith." Father claims that these sanctions are predicated on the Department's failure to "engage meaningfully in the court-ordered process." Despite their creative phrasing, these are improper sanctions for failure to negotiate in good faith.

---

[1] *See In re Acceptance Ins. Co.*, 33 S.W.3d at 451 (stating that the trial court had no authority to investigate whether the relator mediated in good faith). The associate judge's inquiry into the manner in which the Department negotiated and how many offers the Department made during mediation also violated the associate judge's own Order for Mediation. The Order for Mediation expressly stated that "the Court will be advised by the mediator, the parties, and counsel only that the case did or did not settle" and that the mediator "shall not be a witness."

[2] Both parties agree, and the record supports, that these sanctions were not imposed pursuant to any rule or statute authorizing sanctions in this instance; rather, the court imposed these sanctions pursuant to its inherent authority.

The very basis of the parents' request for sanctions was that the Department did not "attempt at mediation to come in to negotiate" and offered "no realistic movement" from termination. At the sanctions hearing, the associate judge emphasized that the Department implied an "intent to negotiate in good faith" by agreeing to attend mediation and then questioned the quality of the Department's substantive negotiation efforts at mediation by scrutinizing the number of offers advanced by the Department and how long it tried to negotiate.

While the ADR Act requires trial courts to encourage alternative dispute resolution, it does not invite post-procedure policing of parties' negotiation efforts or evaluation of the caliber of their participation and engagement in the process. Such a notion does not comport with the voluntary nature of ADR procedures or the ADR Act's confidentiality protections.

Further, "invocation of the court's inherent power to sanction necessitates a finding of bad faith." *Id.* The Texas Supreme Court explained:

> Bad faith is not just intentional conduct but intent to engage in conduct for an impermissible reason, willful noncompliance, or willful ignorance of the facts. "Bad faith" includes "conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose." Errors in judgment, lack of diligence, unreasonableness, negligence, or even gross negligence—without more—do not equate to bad faith. Improper motive, not perfection, is the touchstone. Bad faith can be established with direct or circumstantial evidence, but absent direct evidence, the record must reasonably give rise to an inference of intent or willfulness.

*Id.* at 718-19.  When the record contains no evidence that the sanctioned party acted in bad faith, the sanctions order is an abuse of discretion.  *See Guerra v. L&F Distribs., LLC*, 521 S.W.3d 878, 890 (Tex. App.—San Antonio 2017, no pet.).

Here, while the associate judge and the referring court found a lack of "good faith," neither judge found that the Department acted in "bad faith." Father argues that the record supports a finding of bad faith because the Department appeared "unprepared, took rigid positions, and failed to engage meaningfully in the process" of mediation.  These actions, he argues, demonstrate bad faith as willful noncompliance with "the Court's order to participate in mediation in good faith."

However, maintaining a rigid position at mediation does not demonstrate willful noncompliance with the court's Order for Mediation because the order did not – and could not – require good faith negotiation.  *See In re Acceptance Ins. Co.*, 33 S.W.3d at 451-52.[3]  Further, the associate judge expressed frustration at the Department's lack of diligence in obtaining its medical expert report prior to mediation.  *Brewer*, 601 S.W.3d at 718.  However, "[t]he issue of preparedness relates to whether a party mediated in good faith,"

---

[3] The Order for Mediation designated how the mediation fees would be paid and required the parties to be present during the entire mediation process, supply any information requested by the mediator, and follow any mediation rules imposed by the mediator.

which we have already explained is an inappropriate basis for sanctions. *In re Acceptance Ins. Co.*, 33 S.W.3d at 452. Finally, while the law provides that a party may file a written objection to a court's mediation referral, there is nothing in the record indicating that the Department was aware within the ten-day objection period that it would not have its expert's report in time for mediation or that mediation would otherwise be a fruitless or objectionable exercise. *See Decker*, 824 S.W.2d at 249 (noting that "[m]ediation may be beneficial even if relators believe it will not resolve the lawsuit"). Regardless, the record does not reflect any improper motive behind the Department's failure to object to mediation.

We find no direct or circumstantial evidence in the record demonstrating that the Department was motivated by a "dishonest, discriminatory, or malicious purpose," willfully failed to comply with the trial court's permissible directives, or otherwise exhibited the requisite bad faith to support the sanctions orders. *Brewer*, 601 S.W.3d at 718.

Court Costs for "Good Cause"

The Texas Supreme Court has described "good cause" as an elusive concept that varies from case to case, but it generally involves conduct that unnecessarily prolonged proceedings, unreasonably increased costs, or otherwise warrants penalization. *Furr's*, 53 S.W.3d at 376-77. The "good

cause" stated in the written Order for Costs of Court is that the Department did not object to the mediation referral and did not participate in good faith at mediation.

Father relies on *Texas Department of Transportation v. Pirtle* for the proposition that it is not an abuse of discretion for a trial court to assess attorney's fees and mediator's fees against a party as costs of court when that party does not file a written objection to a court's mediation referral but nevertheless refuses to mediate in good faith. *Tex. Dep't. Trans. v. Pirtle*, 977 S.W.2d 657, 658 (Tex. App.—Fort Worth 1998, pet. denied).

The facts of *Pirtle* are distinguishable. In *Pirtle*, the Department of Transportation "pretty much told [the court] from the beginning they weren't going to mediate" based on a company policy prohibiting settlement of disputed liability cases. *Id.* at 658. The Department of Transportation did not object to the referral but refused to participate in the mediation. *Id.* Here, as noted above, there is nothing in the record indicating that the Department was similarly aware that mediation would be unfruitful or objectionable. The record reflects that the Department appeared at mediation, made at least one offer, and remained at mediation until the mediator called an impasse. Applying *Pirtle*'s reasoning to the facts of this case would produce an absurd result. If a trial court abuses its discretion by ordering a party to negotiate in

good faith or sanctioning a party for failing to do so, it follows that the trial court cannot use a party's failure to negotiate in good faith as "good cause" to assess costs against them. To hold otherwise would permit courts to circumvent the prohibition against sanctioning parties for not negotiating in good faith by simply calling the fee assessment a court cost "for good cause" instead of a sanction.

Accordingly, we find that the Order for Sanctions and the Order for Costs of Court were an abuse of discretion and must be reversed.

## Conclusion

We sustain the Department's sole issue on appeal and reverse the Order for Sanctions and Order for Costs of Court.

STEVE SMITH
Justice

OPINION DELIVERED and FILED: October 2, 2025

Before Chief Justice Johnson,
     Justice Smith, and
     Justice Harris
Reversed
CV06

